And we're going to go on to case number four. And that case is 21-2587 United States v. Christopher Ramirez. Hello. Good morning, your honors, and may it please the court. Adam Stevenson on behalf of Christopher Ramirez. Mr. Ramirez's case raises two issues relating to his sentencing. First, his designation as a career offender using controlled substance offenses as prior predicates. And second, the district court's failure to meaningfully consider his primary argument in mitigation. With regard to that first issue, the career offender issue, the matter directly involves this case, this court's case in Ruth, which indicated that the controlled substance offense definition within the guidelines specifically 4B1.2 was not limited to the Federal Controlled Substances Act, but rather any substance controlled by state law. To the degree that Ruth remains binding law and applicable law, Mr. Ramirez's career offender designation is inappropriate. However, this court has set out factors in Buchmeier that indicate when it is appropriate to reconsider a prior case such as when reconsideration would save work for Congress or the Supreme Court, or when the prevailing doctrine would create substantial injury. Mr. Ramirez feels that Ruth actually fits all three, and I'll address each in turn. With regard to the nature of Ruth as an outlier, Ruth itself actually indicated and recognized that there was an existing split on this issue, the 2nd and 9th circuits had determined that the definition was limited by the Federal Controlled Substances Act, whereas the 6th and 11th at the time, while internally inconsistent, appeared to potentially allow for an expanded view of the definition. Now, a few more circuits followed us after Ruth. Now I guess the split is almost even, right? It is approaching even, yes, Your Honor. The 4th, 8th, and 10th circuits have joined this court, but notably in each of those, whether it be in the panel opinion or in matters relating to there were strong dissents that specifically raised concerns that were addressed in the 2nd circuit in Townsend and the 9th circuit in the Alvega, as well as in the 1st circuit, which has not definitively ruled on the matter yet, but has strongly indicated that in Croco there were significant concerns about a plain language-based approach. But only the Supreme Court, it seems to me, or the Sentencing Commission can fix the split. That is one route in which the split could be fixed, and Justices Sotomayor and Coney Barrett indicated such in their statement relating to the denial of petition for certiorari in Garant. There are some practical limitations, however, though, with regard to the Commission's ability to remedy the problem, especially for individuals like Mr. Ramirez. In terms of the Supreme Court's concern in Garant that the Commission did not have a quorum, that has now been resolved. However, the Commission has indicated that for the 22-23 amendment cycle, their focus will be on the implementation of the First Step Act. Many problems have arisen as a result of implementing that Act and the guidelines interplay. There's also a significant backlog of potential amendments or policy concerns to be addressed. And last but not least, most amendments, in fact, only 30 of 813 amendments have been made retroactive to individuals who had been sentenced and their cases had been concluded. So with regard to individuals such as Mr. Ramirez and others with active cases or who will be sentenced before the Commission to act, if it were to at all, the remedy would be insufficient. And the Supreme Court has often indicated that retroactive correction of guidelines ranges, for example, in Beckles was something that was not available to individuals on, for example, 22-55. So it is still possible that this Court could resolve what is a significant injury. As this Court has recognized, the career offender designation often greatly both impacts the resulting sentence and increases the guidelines range dramatically, often by many years. How do we factor in the fact that the issue was forfeited by failure to raise it below and that we have to review this as plain error? Yes, Your Honor, this was not directly addressed below. It is under plain error and forfeited. However, that plain error can arise after sentencing as the government itself indicated in its brief. And here, we would argue that, again, the reconsideration and, therefore, if that were to occur, the incorrect determination of the guidelines range would be plain error that would be subject to review. If I might quickly speak to the substance, should the Court reconsider as the government indicated? Before you do, just for a minute, I would be interested in your telling me or advising me about this Bookmeyer case. Do you consider that discussion of when we can overrule precedent to be exhaustive or do you look at that as simply an advisory or prudential discussion of when it might be necessary? Indeed, there might be other times when we can overrule a case. Your Honor, I believe that it is demonstrative or it provides examples. It is not all-encompassing. There may be other reasons where the Court deems it appropriate to reconsider past precedent. So, Bookmeyer is... A non-exhaustive discussion? Correct, Your Honor. Thank you for your time. I'll let you go on with your second point. Thank you, Your Honor. With regard to substance, as the government indicated, the Court recently decided U.S. v. Danny Turner addressing the cocaine matter. We referenced that in our opening brief that it was up for argument. I will note that on September 22, Mr. Turner filed a petition for a hearing, and I believe we're hearing on Bach, so that case may continue. We, again, preserve that issue. With regard to Mr. Ramirez's marijuana conviction, we've addressed the differences between the federal and state statutes. The government raised a Sixth Circuit case in its 28-E letter. Clark, I would note that those many of the cases cited therein deal with changes in statutory maximums and minimums, making the cases either felonies or misdemeanors, not with regard to the substance that was controlled in that case. Lastly, and very quickly, Mr. Ramirez did not have meaningful consideration of his primary argument at sentencing, one he raised himself directly, and that is what the PSR called his astounding family circumstances. Mr. Ramirez was born, frankly, into a major drug organization, was physically abused, used numerous substances, essentially since his early teens and before, and was just generally experienced a significant amount of trauma in his upbringing. In response to this, the district court did acknowledge the argument briefly, but instead focused on, for example, assumptions relating to prior sentences as treatment dispositions when only one was specifically indicated, that being the stop program relating to alcohol usage. And so rather than a bright-line rule, it is a sliding scale that the district court must adequately and meaningfully consider arguments in mitigation so that this court can feel that the district court in fact considered and appropriately either agreed with or rejected those arguments. Unless the court has further questions, I'd like to reserve the remainder of my time. Thank you so much, Professor Stevenson. Thank you. All right. Mr. Koenig. Good morning. May it please the court. Good morning. Jonathan Koenig appears on behalf of the United States of America. Before I forget, I'd like to wish Professor Stevenson a speedy recovery, and I'll launch into my argument. First and foremost, with regard to the career offender issue, this is a plain error case, as Judge Roedner indicated in one of her questions. And there was no error, plain or otherwise, in sentencing Ramirez as a career offender after Ruth. Here I'm talking about Part B of Ruth, dealing with 4B1.2 and the definition of controlled substance offense. So really, the only way Ramirez can prevail in this appeal is if he persuades this court to use this case as a vehicle for revisiting that part of Ruth. From the government's perspective, Ruth was correctly decided, and as a prudential matter, this court should be reluctant to disturb the precedent. It was correctly decided because it gives effect to what the guideline definition of controlled substance offense in 4B1.2 says and what it does not say. As relevant here, the definition says controlled substance offense is an offense under federal or state law punishable by imprisonment for a term exceeding one year that prohibits the intent to manufacture, import, export, distribute, or dispense. And here I'm quoting right from Ruth, the definition does not incorporate, cross-reference, or in any way refer to the Controlled Substances Act. And that's how it differs from 841, which was addressed in the first part of Ruth. This court in Hudson said, Hudson was kind of precursor to this case. It involved a different part of the guideline. The court said we must give meaning to the sentencing commission's silences as well as its words. In other words, the commission knows how to incorporate, it knows how to cross-reference, and it chose not to do so here. That is significant. Even if Ruth did not rest on such a strong textual basis, cases such as Buckmeyer and Thomas would caution against disturbing the precedent. They would not argue in favor of constantly relitigating. If I could interrupt you there just for a minute, Mr. Cohen. Do you think that discussion of when we should consider overruling precedent in Buckmeyer is exhaustive, or do you think it's just a prudential instruction and no more? Well, Your Honor, that's a fascinating question. It would be a good law review article. I could imagine a situation maybe where another circuit raised an argument about this issue or another issue that had never occurred to the panel here in the Seventh Circuit, and maybe the court would be so persuaded by that line of argument that it would want to change course. So I'm reluctant to say that those factors are carved in stone. I think that's a thoughtful comment, and one not really addressed by the Buckmeyer cases. I'm sorry, Your Honor? And one not really addressed by Buckmeyer, yeah. Right, but the only thing I would add is that my opponent hasn't really identified a factor that would fall outside of that that's compelling. Well, Judge Rover identified a factor that's really in your favor, didn't she? She sensed our decision and other circuits joined us. In other words, other circuits have said, yeah, that looks like it's the right approach. Yes, in fact, I'm glad you mentioned that because as I was preparing for oral argument, looking over my brief, as is often the case, I thought of different ways I might have prepared our brief, and I really probably should have gone into a Jones and Ward in the 8th, 10th, and 4th circuits. They deepen and expand the rationale for the interpretation that this court advanced in Ruth. Henderson, like Ruth, emphasizes textual interpretation. Jones from the 10th circuit has a very good discussion of why the enabling legislation, 994H, does not prohibit the Sentencing Commission from extending the definition to state law offenses. Ward has a very good discussion of the Jerome presumption, which my opponent relies on in his argument. We have argued, just to remind the panel, that the Jerome presumption is a presumption and it can be overcome. Here, the government believes it's been overcome by the commission's choice of the language for state law, federal or state law. Indeed, the split has become more, it's more even, I guess, than it was when this court decided Ruth. There's a handful of cases that agree with Ramirez, a handful that agree with the government, and then a couple in the middle where there's intra-circuit confusion, and certainly on both sides, I think, maybe judges who don't entirely agree with what the panel in their circuit did. But the bottom line doesn't change, which is that changing course will not accomplish anything. Except, this is where I guess I have just a bit of a problem, except getting it right. In other words, if we are wrong, we ought to try to get it right. And that's what Buckmeyer seems to give short shrift to, it seemed to me, that doggone it, you know, who was it, Frank Furter, who said, you know, wisdom comes not too often, so when it comes late, you ought to stand up and salute. That's a paraphrase. Well, I wouldn't disagree with that. But at the same time, Ruth is not an outlier, so that even if the court were persuaded that Part B of Ruth is wrong, changing course is not going to address the situation in the same way that the Sentencing Commission or the Supreme Court could bring clarity here. And just on that topic, my understanding is that the Commission is reconstituted and will have its first meeting this week, I think. They are in the process of defining their priorities. I'm not sure that they have finalized those priorities. But I would imagine, and I'm just speculating, but I would imagine that when two Supreme Court justices identify a problem, the Commission would stand up and pay attention and that eventually the Commission will consider this issue. I realize it has a very, very full plate right now. So those are my arguments on the career offender issue. We think the court got it right in Ruth. We also think it's a prudential matter that the court should refrain from disturbing that precedent and let the process take its normal course. Turning to the sentencing issue very briefly, the other sentencing issue, the claim that Judge Griesbach failed to give meaningful consideration to the defendant. The judge not only acknowledged the defendant's horrendous childhood, he gave the defendant the benefit of the doubt on that. That was what doctors call self-reported. There was no corroboration to the pre-sentence writer of any of that information. But the judge said he would take it at face value. And he did address the issue. He didn't find that horrendous childhood to be an argument for leniency. He said maybe it would be from an 18 or 19-year-old defendant, but from a 39-year-old offender with a very significant record who had been peddling large quantities of methamphetamine laced with fentanyl, the bad childhood argument was not, in Judge Griesbach's opinion, an argument for leniency. So it wasn't an abuse of discretion to analyze the history and characteristics of the defendant that way. Whether this panel agrees or disagrees, that was a reasonable approach. And so there was no abuse of discretion, certainly in a procedural sense, and as we've argued in our brief, the sentence was substantively reasonable as well, being more than five years below the bottom of the guidelines range. In fact, they went so far as to, after a defense position of consecutive to the state sentences, actually Judge Griesbach ordered concurrent, correct? That's true. And as well, the resulting sentence was near the top but below the top of the guideline range that would apply without career offender. Unless there are any further questions from the panel, we would ask you to refer them. Thank you, Mr. Kainan. Thank you. Please give Professor Stevenson four minutes. Thank you, Your Honor. Three points in rebuttal, specifically first with regard to Ruth and how it is potentially an outlier or how it is somewhat unique with regard to the circuit split that currently exists. Again, Ruth specifically indicated and recognized that there was an especially out of Townsend, related to Jerome, Taylor, and others, just indicated that it was applying precedent from Hudson related to counterfeit offenses, or excuse me, counterfeit substances. Liel Vega out of the Ninth Circuit directly addressed this issue and indicated that the counterfeit substance component has a dictionary definition that is reasonably clear, whereas the Controlled Substances Act has to be tied to law. And with regard to that tied to law, my second point, counsel for the government indicates that the plain language provides an ability to consider a broad swath of state statutes with regard to what is controlled as a substance for the purposes of this enhancement. That text needs to be read in regime, and specifically the guidelines were created and contained in their preamble, indications that reasonable uniformity is the goal of the guidelines range. And so with multiple different states and their different controlled substances, as well as the differences that currently exist across circuits with regard to what we look for for controlled substances, that uniformity aim is not achieved. Lastly, with regard to the Sentencing Commission, it is in a position, it is its obligation to fulfill that very uniformity principle. However, again, for individuals like Mr. Ramirez or those who came before, there is the concern of, as Judge Ripple put it, getting it right. And as we have seen with regard to career offender designation changes, most recently the removal of the residual clause, for example, in favor of more enumerated offenses, that guideline range change was not made retroactive. So defendants sentenced under the old regime that would not have been sentenced as a career offender prior to, or excuse me, under the amendment, had no opportunity for relief. And that is the potential substantial injury under Buchmeier, in addition to the general hope to ensure that we get it right. Mr. Ramirez here feels that, and the guidelines so indicate that, the uniformity principle, that reasonable sense of a common standard, especially under the categorical approach under Taylor and modified by Shepard, is the most important part of the guidelines. It's one of the reasons for their creation. And therefore, we would ask the court to reconsider Ruth. We would also ask the courts to vacate Mr. Ramirez's sentence and remand for resentencing for meaningful consideration of his arguments at sentencing. Unless there are further questions. Thank you. Well, Professor Stevenson, we thank you and the University of Wisconsin Law School, and particularly attorney to be Isaac Schwartz and attorney to be Erica Young. You've done everything you can to help your client. And along with Mr. Koenig, we hope you feel a lot better very soon. And thank you. It was valiant to come. Thank you, all right. Thank you. No case will be taken under advisement.